## WALLS *vs.* SMITH.

### APPEAL FROM THE COURT OF THE FIRST DISTRICT.

A judgment cannot be had against the bail, unless one has been had against the principal.

This was an action against the surety on a bond given by one Wilson, who was arrested, upon an affidavit made upon the authority of the amendment to the Code of Practice, article 237, which gives to the creditor the right, upon an affidavit merely, to hold his debtor to bail, provided the petition and citation be served on him the subsequent day. In this case, before the petition and citation could be served on the following day, Wilson left the state. A judgment by default was then taken against him, which was afterwards made final, appealed from and reversed in the appellate court, on the ground that a party could not be held liable, where no process of citation was served. Suit was afterwards brought against the surety. There was judgment for the defendant, and the plaintiff appealed.

*McCaleb*, for appellant, contended :

1. The plaintiff ought to have recovered, as it is shown that Wilson *departed from the state without the leave of the court,* after he had been arrested, and thereby *broke the condition of his bond.*

2. This court has established the principle, that in whatever mode a party binds himself, he is by our law bound. *Morgan* vs. *Furst et als.* 4 *Martin, N. S. p.* 122. *Civil Code,* 1940, 1946.

*Conrad, contra :*

1. In alternative obligations, the obligor may elect the alternative. He cited *Civil Code, article* 2057. *Code of Practice, articles* 219, 230. 8 *Martin, N. S.* 168.

*Porter, J.* dissenting in this case, the judges delivered their opinions *seriatim.*

*Porter, J.* :

By an act of the legislature of this state, passed the twenty-fifth of March, 1828, section 4, it was enacted, "that in all cases where attachments, arrests and sequestrations are demandable, the plaintiff, his agent or attorney, having made affidavit, and given bond in conformity with law, and having filed the same in court, it shall be the duty of the clerk to issue forthwith the process required, without any petition being then presented; but the usual petition shall be filed on the day succeeding that on which the said process shall have issued."

Under this statute, the plaintiff procured the arrest of a certain Levi Wilson, whom he alleged to be his debtor. Wilson gave bond with the defendant as surety, and was released from confinement. The condition of the bond was in these words : " That if the above bound Levi Wilson, in the custody of the sheriff, at the suit of William Walls, in the honorable the District Court of the first district of the state of Louisiana, but released from the said custody at the time' and by reason of the ensealing and delivery of these presents, shall not depart from the state of Louisiana, without leave of the said court, or in case of his departure as aforesaid, without leave as aforesaid, if he, the said Palmer Smith, will pay, or cause to be paid to the said sheriff, the amount of such final judgment, sentence or decree, as shall be rendered in the

EASTERN DIST.
March, 1832.

WALLS
vs.
SMITH.

said suit against the said Levi Wilson ; then the obligation to be void, or otherwise to remain in full force."

This obligation was signed by Wilson, the debtor, and Smith, the present defendant, as surety. Immediately after, it was executed, and the debtor released, he departed from the state without leave of the court. This departure took place with such expedition, that he evaded service of the petition and citation, and consequently no judgment could be rendered against him.

To this action, now brought for a breach of the condition of the bond, by the debtor's departing from the state without leave of the court, the surety pleads, that judgment has not been obtained against the principal debtor, and that the plaintiff has no cause of action.

If this be true, it leads to a strange result. The obligor committed a breach of the conditions of the bond, by departing without leave ; and this breach becomes the means of discharging him and his surety from all responsibility.

The law ought not, and in my judgment does not, sanction such a conclusion.

There is nothing in our statutory provisions, in relation to bail bonds, which takes instruments of this kind out of the control of those rules, which govern all other obligations, to which conditions are annexed.

The condition of this bond, we have seen, was that the defendant should not depart without leave of the court ; but that if he did, the bond might be discharged by paying the amount of the judgment which should be rendered against him. The privilege thus accorded the defendant to pay the judgment, necessarily implied an obligation on the part of the plaintiff to obtain judgment before he had a right to consider the bond as forfeited. In other words, it made a part of the conditions on which the parties became responsible, that the plaintiff should obtain judgment against the defendant.

He has not done so ; and in an ordinary case the failure to comply with the condition, would be an insuperable bar to his recovery. But here the law steps in, where reason says it should, and declares that the non-compliance on the part of

the obligee, presents no obstacle to his enforcing the obligation, where the non-performance of the condition imposed on him, has been owing to an act of the obligor.

It is a trite, and perfectly well established principle of jurisprudence, that no man can take advantage of his own wrong, and the law has been careful to make a special application of this maxim to cases, where conditions form a part of the contract. *Coke on Littleton*, 221–2. *Digest, liv.* 45, *tit.* 1. *law* 89. *Pothier on Obligations, no.* 212.

The author last cited gives the rule in these words : "*C'est une règle commune à toutes les conditions des obligations, qu'elles doivent passer pour accomplies, lorsque le débiteur qui s'est obligé sous cette condition, en a empêché l'accomplissement.*"

The Napoleon Code copies, almost verbatim, this clause, and the article in our old code, is word for word in the French text, that of the Napoleon. *Code Napoleon, article* 1178. *C. Code,* 275, *article* 78.

In the English text, indeed, a rule is given, to which it is difficult to attach any precise meaning. It says, "The condition is considered as fulfilled, when the fulfilment of it has been prevented by the party bound to perform it." This enactment presents a very different idea from the French text, and in case the obligation was conditional on acts to be done, or not to be done by the debtor, would lead to very absurd consequences.

It is evidently a mistake of the translator, and it is to be regretted that the error escaped notice in the late revision of the code. The article has been re-printed in the Louisiana Code without any change, and still stands as an expression of legislative will. *Louisiana Code,* 2035.

But, be the meaning of it what it may, the clear and obvious sense of the French text is, that the condition is considered as accomplished, when the debtor, whose obligation depends on this condition, prevents the accomplishment of it ; and, according to the rules of construction repeatedly applied in this court to the old Civil Code, that interpretation is to be followed, which gives effect, if possible, to both texts.

It is clear, then, the law does not permit the party whose obligation depends on a condition, to allege the non-performance of that condition in defence, where it was through his fault it was not performed. That it was by his fault, the obligation imposed on the plaintiff, in the instance before us, was not complied with, cannot be the subject of much controversy.

Previous to the act of the legislature, which enabled the plaintiff to take the body of the defendant before service of the citation and petition, the object of arrest was to secure the surrender of the defendant's person in case judgment should be given against him. The obligations, therefore, which the bail bond imposed, were properly construed in relation to the object to be attained, and the intention of the parties who signed the instrument. But, under the provisions of the statute, in virtue of which the arrest in the present case took place, another and totally different purpose was sought for, namely, to secure his person until service of the petition and citation could be made on him. An ignorance of this law, cannot be alleged by the parties, and they must be presumed to have contracted in reference to it. We are bound, therefore to look to their intention, rather than follow the strict meaning of the words they have used. This is the rule prescribed for the interpretation of all contracts. It is that expressly furnished in regard to conditions in obligations. The 2032d article of the Louisiana Code provides that " every condition must be performed in the manner it is probable the parties wished and intended it should be performed." Can any one believe, that in a contract of this description, the object of which was to secure the person of the debtor, so that service of the petition and citation *could be* made on him, it was the intention of the parties that the engagement on the part of the defendant, not to leave the state, was to be performed in such a way that service *could not be* made on him ? We may safely, I think, conclude it was not the plaintiff's understanding of the agreement, nor can it be presumed to be that of the debtor. If it was, the avowal of it comes from him with a bad grace, and should receive no favor. When

we add to these considerations that which is drawn from the well settled principle of law, that in all instruments made in the course of judicial proceedings, in which there exists ambiguity, that construction must be preferred which will give to the mandate of the law, or the order of the judge, its full effect, I do not think the bail bond can be so interpreted, as to completely defeat the object for which it was given. See *Domat, lib.* 1, *tit.* 1, § 2, *no.* 24. *Digest, liv.* 45, *tit.* 1. *Liv.* 52. *Ibid liv.* 46, *tit.* 5, *l.* 9.

Hitherto the case has been considered as if the original debtor was before the court, because it is understood the surety's obligations are co-extensive with his. They are always regarded so, unless there be an express limitation in the contract. And if it be suspended by a condition, whatever makes the engagement absolute against the principal, produces the same effect on the surety. He is bound by the 3008th article of the Louisiana Code, not merely to what is expressed, but to every thing which is intended by the contract. The law, however, has made an exception in a bond of this kind in relation to the discharge or performance. It permits the surety to release himself from responsibility at any time before judgment is rendered against him, by surrendering the body of the principal debtor. It is not seen how this principle, even if pushed to its utmost extent, can at all affect the case before us. Whether the defendant might not, at any time before judgment was rendered against him in the District Court, have surrendered the body of the debtor, we are not required to say, for he did not surrender him, nor attempt to do so. It is possible, nay probable, the rights of the surety in this instance are the same, as if judgment had been rendered against the principal debtor; but if his right be the same, so also are his obligations and his duties.

Under this view of the case, and I am unable to view it otherwise, I conclude that there should be judgment for the plaintiff.

*Martin, J.:*

The defendant is sued as bail of Wilson, and debtor of the plaintiff, not summarily by motion, but by petition.

It is stated, that Wilson was arrested on an affidavit in pursuance of an act of assembly, (1828) amending the 237th article of the Code of Practice, and that before the citation was served, he departed from the state without leave, the justice of the plaintiff's claim against Wilson, is averred, and judgment is prayed against the defendant, his bail therefor.

The general issue was pleaded, but the execution of the bond was admitted.

There was judgment for the defendant and the plaintiff appealed.

The facts are, that Wilson was arrested on the 27th of April, 1830, and bailed on the same day, and on the twenty-eighth, a citation was put in the sheriff's hand which he served on the bail, Wilson not being found, judgment by default was taken and made final, and on Wilson's appeal, we dismissed the suit, on the ground, that the citation was not served *on him*, but on the bail. It appears, Wilson was seen in Shipping-port, Kentucky, about one month after, but the day of his departure is not shown, he went away in, and was an officer and part owner of the steamboat Tygress, which was lost on her way, and returned to New-Orleans, long before the reversal of the judgment against him, on the suit in which the appellee was his bail, and has remained in the state ever since. He is now insolvent, but had some property at the maturity of the note, on which he was sued, and he offered it to the appellant.

The appellant's counsel has contended, that the condition of the bond, *that the defendant should not depart from the state without leave of the court,* has been broken, and consequently the appellee is fixed with the debt and costs, that the want of a judgment against Wilson, cannot be urged by the appellee, because the appellant was prevented from obtaining that judgment by the act of Wilson, and one of these acts, on which the appellee depended. Wilson by his departure, having evaded the service of the citation.

He has pressed upon us the obligation of the bail, in a case like the present, to see that the principal remain visible to receive the citation. He has endeavored to excite our sympathies for his client, by representing the conduct of the principal and the bail, as an attempt to evade the law.

I think the appellant cannot recover, because he failed in obtaining judgment against the appellee's principal, his suit having been dismissed in this court.

In my opinion, the fact of the service of the citation having been prevented by Wilson's departure, does not appear to be attributable to any improper conduct in Wilson. It is not shown that Wilson departed on the day of his arrest, nor otherwise prevented the service, although the sheriff's return, that the citation was in his hands on the next, and that *seven* days after he served it on the bail, Wilson not being found. The sheriff not finding him, might be owing to the appellant's failure, to afford correct information of his residence, or any other cause not imputable to him. The day of his departure might have been discovered, for it is sworn, he went away in a particular boat, of which he was an officer and part owner. His departure having an apparent and lawful motive, cannot be gratuitously imputed to the dishonest one of evading the service of the citation. If the circumstance of his being at Shippingport, within one month after, might have enabled him to contend, from the number of days requisite for the voyage, to show, that he must have departed on the twenty-eighth or twenty-ninth, he must have placed evidence of this fact on the record.

No law compels a defendant, arrested on an affidavit, to call on the sheriff on the next day to receive the citation, nor to abstain from travelling into another *parish*, if business call him there, though this may *delay* or *prevent* the service.

Departure from the *state*, we have decided, leaves to the bail the faculty of releasing himself from all responsibility, by a surrender at any time before judgment against him. It is a perfectly innocent act *per se*. A defendant who has been held to bail, and who keeps a ferry between Vidalia and the city of Natchez, may honestly continue his calling, although

he hourly departs this state and lands in that of Mississippi. Is there much difference between the ferryman and the master, officer or any hands of a boat plying between New-Orleans and Natchez, or Shippingport? In the latter case, the departure is fair or unfair, according to circumstances. In the present case, if Wilson was not served with the citation, for several days after his arrest, without any act of his to evade the service, nothing, in my opinion, compelled him to leave the boat and lose his voyage.

But, admitting the departure was for the purpose of evading the service, still, in my judgment, the appellee may resist the present action. Nothing shows any connivance between the bail and the principal; and the misconduct of the latter could not deprive the former of the faculty of protecting himself by a surrender. Of this faculty, the appellant has, in my opinion, deprived him by a virtual dismissal of this suit, i. e. by prosecuting in so illegal a manner as to enable Wilson to claim the dismissal at our hands.

If the present suit be maintainable, i. e. if the departure be a breach of the condition, which authorises a suit on the bond, the appellant's right was open as soon as the breach happened. Had it been then enforced, and had the action against Wilson been kept alive, by *alias,* and *pluries* citations, the appellee would have been enabled to surrender his principal, and the appellant to serve his citation. The dismissal of the suit, by the voluntary act or the mistake of the appellant, disabled the appellee from the faculty of a surrender. After our judgment in Wilson's favor, he might have maintained an action of false imprisonment against the appellant, if he had arrested him in order of surrendering him. The sheriff could neither have received or detained him; for which, there was no action to which he was bound to answer.

The appellant's counsel, who urges that his opponent cannot avail himself of the want of a judgment, because his client was prevented from obtaining one, by the act of one of the obligors on the bond, has ill grace in resisting the appellee's plea, that, as by the act of the appellant, he was prevented

from surrendering, the want of a surrender cannot be objection to him.

I do not wish to be understood as admitting that in any case, judgment may be had against the bail before judgment against the principal. The law imperiously demands, that the judgments against the former *be the same as that given against the debtor himself.   Code of Practice, 236.*   This it is unnecessary to determine in the present case.

The act of assembly, on which the arrest took place, is worded in such a manner as to leave a door open to fraud.   In such a case, the remedy must be sought from the legislature. Courts of justice are not competent to supply it.

In the present case, it has appeared to me, complete justice has been done by the district judge.   Wilson returned early enough to meet the definitive judgment, if it had been against him.   It is admitted he was back long before our judgment on his appeal.

If he really departed from the state, with the view of preventing the service of the citation, the appellant has, in my opinion, failed in producing evidence of it.

I have doubted whether justice requires that the case should be remanded, in order to afford him the opportunity of doing so.   Persons who become bail for their friends, are certainly bound by their engagements to indemnify the plaintiffs, and there is not much reason for treating them more favorably than other sureties.

In the present case, however, the early return of Wilson and his stay in the state till this moment, for aught that appears on the record, repels the idea that he intended any injury to his creditor, whose remedy has not been impaired by any circumstance which his remaining in the state, during the pendency of the suit against him, could have prevented. His insolvency is attributed justly to the loss of the steamboat, of which he was a part owner, an event which his going in her was calculated rather to avert than to occasion.

I think this court ought to affirm the judgment.

*Mathews, J.:*

This is a suit against the surety of a certain Levi Wilson in a bail bond, given to the sheriff, who had arrested the latter, on process issued for that purpose, in conformity with the 4th section of the act of the legislature, passed in March, 1828, to amend several articles of the Civil Code and Code of Practice, which provides, " that in all cases where attachments, arrests and sequestrations are demandable, the plaintiff, his agent or attorney, having made affidavit and given bond in conformity to law, and having filed the same in court, it shall be the duty of the clerk, to issue forthwith, the process required, without any petition being presented ; but the usual petition shall be filed on the day succeeding that, on which the said process shall have issued, &c., and the sheriff shall proceed immediately to execute said process according to its tenor."

In pursuance of this law, the present plaintiff, in a suit against Wilson, had him arrested, and Smith the defendant became his bail. Previous, however, to the filing of the petition and service of citation, in the ordinary forms of proceeding, the defendant in that suit departed from the state and service could not be made on him. Notwithstanding this want of service, the plaintiff took judgment by default, which was afterwards made final, appealed from and reversed. And then, without having obtained any judgment against the original debtor, brought the present suit against the bail, who succeeded in his defence, and the plaintiff appealed.

The conditions of the bail bond are in the usual form of such instruments, taken from persons arrested in cases, wherein bail may be lawfully required, and impose on the surety, the obligation designated by the art. 219 of the Code of Practice, which is, to pay to the sheriff the amount for which definitive judgment shall be rendered in the cause, if the debtor has violated the condition of the bond, by departing from the state, without leave of the court. The art. 230 of this code, provides for the mode in which a surety in a bail bond, may discharge himself from all responsibility, by surrendering to the sheriff, the debtor who had been arrested, &c.

It is true, this article seems to imply other conditions, besides those expressed in the bond now under consideration, but it is precisely similar to one which received an interpretation in the case of *Jayne et als.* vs. *Cox*, reported in 8*th N. S., p.* 169, and as we believe, like all instruments of this kind, taken by the sheriffs throughout the state, in all cases where bail is required.

They have been considered, and acted on in all instances, as if they imposed the same obligations on the sureties as are created by a recognizance of bail to the action, or bail above, as denominated by writers on the Laws of England. *See* 3 *Blackstone's Com., p.* 290—1, *and the appendix nos.* 3—5.

The bond, in the present case, contains no condition for the appearance of the person who was arrested, to answer to the petition of the plaintiff. Its conditions are more similar to those contained in a recognizance of bail to the action, and were thus considered, in relation to the bond, in the case above cited from 8 *N. S.* Viewed in this light, the principal obligations assumed by the surety, are to pay the amount of the judgment rendered against the debtor, or to surrender him in execution. But as the plaintiff failed to obtain any judgment in the original suit, these conditions or objections have become impossible, they cannot be complied with, and must therefore be considered as dissolved, unless we undertake to place the defendant in a worse situation than he legally assumed, according to the tenor of his contract.

A judgment cannot be had against the bail, unless one has been had against the principal.

The consequence of a bail bond, given in pursuance of our laws, seems to be a complete discharge from arrest, in favor of a debtor, he is not supposed to be delivered over to his sureties, and to continue in their friendly custody instead of going to jail. It is true, they may cause him to be again arrested for the purpose of delivering him to the sheriff, in discharge of their obligation. If, however, the debtor refuse to go voluntarily to be surrendered, his surety must petition for and obtain the order of the judge to have him arrested, and annex to his petition, an authentic copy of the act by which he became surety. *See art.* 233 *Code of Practice.*

By this interpretation of the bond, in the present instance, the object of the law, seems to be defeated, but this arises from the want of a condition, in conformity with the evident intention of the provisions of the act, authorising arrest without service of the petition and citation, which is, that a defendant should be bound to remain within the jurisdictional limits of the court, from which the original process of arrest issued, for a time sufficient to receive service of citation, &c.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.