75 So.2d 28

GEORGE W. GARIG TRANSFER, Inc.

v.

J. Dolan HARRIS, d/b/a Magnolia Express.

No. 40669.

July 2, 1954.

Rehearing Denied Oct. 5, 1954.

Normann & Normann and Lee F. Murphy, New Orleans, for appellant.

Breazeale, Sachse & Wilson, Baton. Rouge, for appellee.

FOURNET, Chief Justice.

The plaintiff, George W. Garig Transfer,. Inc., a Louisiana corporation, instituted. proceedings by non-resident attachment and substituted service through a curator ad. hoc against the defendant, J. Dolan Harris,. d/b/a Magnolia Express, a resident of Mississippi, seeking to be declared the owner of Louisiana Public Service Commission Certificate No. 297–A authorizing operation of a common carrier motor freight service between New Orleans and the Louisiana-Mississippi state line on U. S. Highway 51,. in both directions, and serving all intermediate points; and seeking also to recover damages for alleged loss of profits. From a. judgment declaring plaintiff to be the owner of the certificate, both parties have appealed.

The facts giving rise to this controversy are not disputed. Those pertinent to the issue, as revealed by the record, are that for several years the plaintiff had been desirous. of purchasing from the defendant the said.

certificate, and following extended discussion the parties came to an agreement whereby the defendant was to sell the certificate to the plaintiff for $4,000 cash. An act of cash sale was prepared by the plaintiff at Baton Rouge (its domicile) and mailed to the defendant in Mississippi, where it was duly executed before a notary and two witnesses on April 19, 1950, and was then brought to Baton Rouge by the defendant. Two days later, in that city, the parties by written instrument "agreed that the said contract of sale which they have executed, together with the consideration therein stipulated consisting of $4,000 cash, shall be placed in escrow with the City National Bank of Baton Rouge, Louisiana, Escrow Agent, together with a copy of this contract, to be by said agent held under the terms of this agreement;" with instructions that upon the approval of the transfer of the Certificate by the Public Service Commission, to be sought by a joint petition to that body, and evidenced by its Order, the agent "shall deliver the contract of sale to the said purchaser and the consideration thereof to the said seller," but in the event that the Commission should issue an Order denying the transfer, the agent "is * * * directed to return said contract of sale to the said seller and the said consideration to

the said purchaser, and this agreement shall thereupon be cancelled."

It appears that at the time of the execution of this agreement, a joint petition to carry out this transfer had already been filed with the Public Service Commission. The Commission, however, did not consider the matter until its meeting of August 23, 1950.[1] In the meantime, on August 9th, the defendant had filed a written motion stating his desire to withdraw from the joint petition and seeking to have the matter dismissed. At the meeting, the plaintiff opposed defendant's right to withdraw, and the Commission heard testimony as to plaintiff's ability to render the necessary service, with the result that it found plaintiff was able and willing to perform; it ruled that the transfer would have been approved, but that it was without power to prevent defendant's withdrawal as a party to the application and that a determination of the status of the parties under the contract was a matter exclusively within the jurisdiction of the courts. The case was ordered discontinued without prejudice to the rights of the parties. The plaintiff thereupon instituted these proceedings, on October 28, 1950, in the Nineteenth Judicial District Court, Parish of East Baton Rouge, seizing the contract of sale of Certificate No.

1. At the May meeting of the Commission, when the case was called, a competing carrier opposed the transfer and obtained a continuance for preparation of its opposition, despite plaintiff's protest. The Commission did not meet during June and July, and the case was therefore assigned to be heard at the August meeting.

297–A and the sum on deposit with the Escrow Agent, City National Bank, by way of garnishment under a writ of attachment.

On the 9th of November following, the defendant appeared through counsel of his own choice and filed a motion to dissolve the attachment and dismiss the suit on the allegation that the bond was defective in that it failed to describe the property to be attached or to recite the identity of its owner. Subsequently, on November 15th, he filed exceptions: (1) to the jurisdiction ratione personae, and (2) to the jurisdiction ratione materiae; and in the same document, in the following order but in the alternative, in each case reserving his rights under previous rulings, (A) excepted to the petition on the ground that plaintiff should be ordered to elect whether his cause of action was (1) an action for specific performance and damages, (2) ownership of the certificate, with damages, (3) a possessory action for a movable, (4) a petitory action, or (5) an action for eviction; (B) again urged exceptions to the jurisdiction ratione personae and ratione materiae; (C) excepted to the petition on the ground that (1) it failed to state a right of action, (2) failed to state a cause of action, (3) was too vague and indefinite, (4) contained an improper cumulation of actions.

The exceptions, after argument and submission, were disposed of by the trial judge as follows:[2] Those to the jurisdiction ratione personae and ratione materiae were overruled; the motion for election of remedies was overruled; the exceptions of no cause or right of action were referred to the merits; those of vagueness and improper cumulation of actions were overruled. Following these rulings, the defendant answered, denying that the sale was ever consummated and averring that he executed an agreement to sell or transfer the certificate only if the transfer should be approved by the Commission, failing which there was no sale.

Following trial of the case on the merits the trial judge, in his written reasons for judgment, expressed the view that he "had jurisdiction of the res, that is, the certificate in question," and therefore "had jurisdiction to proceed with the case, since ownership [of the certificate] was the principal issue," as reflected by the prayer of the petition; he also found that a reading of the petition showed there was clearly no merit to the other exceptions; and on the merits, concluded "that the contract under consideration here cannot be properly labeled either a contract of sale or a contract to sell, but more properly a contract conditioned upon an event happening over which neither of the parties had absolute control," and was governed by the provisions of the LSA–Civil Code declaring "When an obligation has been contracted on condition that an event shall happen within a limited time,

2. The motion to dissolve the writ of attachment had been previously denied, on November 27, 1950.

the condition is considered as broken, when the time has expired without the event having taken place. If there be no time fixed, the condition may always be performed, and it is not considered as broken, until it is become certain that the event will not happen", Art. 2038, but "The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it," Art. 2040. There was judgment decreeing the plaintiff to be the owner of Certificate 297–A, and ordering the City National Bank of 'Baton Rouge, Escrow Agent, to deliver to the plaintiff the contract of sale of said certificate and to the defendant the $4,000. While the Court, in its written reasons for judgment, expressed the opinion that "the plaintiff failed to show with sufficient clarity the damages sought, and hence that part of its demand will be rejected," the judgment is silent on the point.

It appears to us that when the defendant submitted his plea to the jurisdiction ratione materiae at the same time as he submitted the plea to the jurisdiction ratione personae, and these were argued, submitted, and disposed of in one judgment, his action constituted a waiver of the exception to the jurisdiction ratione personae. State ex rel. Brenner v. Noe, 186 La. 102, 171 So. 708; Martel Syndicate v. Block, 154 La. 869, 98 So. 400. Under the well settled jurisprudence of this Court, the exception of want of jurisdiction ratione personae, to be valid, must be presented in limine and alone, and "an appearance to the suit, except for the purpose of objecting to the jurisdiction, or to the process or citation, subjects defendant to the jurisdiction of the Court." First Nat. Bank of Arcadia v. Johnson, 130 La. 288, at page 290, 57 So. 930, at page 931. See, also, City Nat. Bank of Selma v. Walker, 130 La. 810, 58 So. 580. In the Block case, supra [154 La. 869, 98 So. 401], Block was cited through a curator-ad-hoc who made no appearance, but counsel of his own selection filed on his behalf the following exceptions: "(1) That defendant is a resident and citizen of the state of Texas, and cannot be brought into court by substituted service; (2) that the Martel Syndicate is domiciled at Jennings, Jefferson Davis parish, and the court of Acadia parish is without jurisdiction of the res or the corporation; * * *" and the Court held that the defendant by his action had tendered conjointly all the issues which the court was asked to determine, and by so doing had personally submitted himself to the jurisdiction of the Court.

In any event, we think the trial judge, in his ruling that he had jurisdiction of the res, was correct. Certificate 297–A, known as a certificate of public convenience and necessity, which authorizes the operation of common carrier motor freight service between two given terminal points exclusively within the State of Louisiana (New Orleans northward to the Mississippi state line over U. S. Highway 51), was issued pursuant to the Order of the

Public Service Commission, this Commission having exclusive authority to issue such a certificate and being domiciled at Baton Rouge, within the jurisdiction of the Nineteenth Judicial District Court, where its archives and records are kept. While it is true that the defendant executed the ·sale of the subject Certificate in the State ·of Mississippi, he personally brought the ·contract of sale, complete in all respects, to Baton Rouge; he entered into the escrow agreement in Baton Rouge, depositing with that contract the act of sale and authorizing delivery thereof in Baton Rouge under condition that the transfer should be approved by the Commission—having previously voluntarily joined in the petition to the Commission at Baton Rouge to transfer the certificate.

We are also in full accord with the trial judge's view that the escrow agreement was a binding obligation on both parties, under the Civil law. True, it contained a suspensive condition, but "The contract of which the condition forms a part is, like all others, complete by the assent of the parties; * * *" LSA–C.C. Art. 2028, and "Every condition must be performed in the manner that it is probable that the parties wished and intended that it should be" LSA–C.C. Art. 2037; moreover, the condition is considered as accomplished when the debtor, bound under that condition, has prevented its accomplishment, Art. 2040.[3] In applying the last Article this Court, in the case of Walls v. Smith, 3 La. 498, aptly observed: "It is clear, then, the law does not permit the party whose obligation depends on a condition, to allege the non-performance of that condition in defence, where it was through his fault it was not · performed," and "It is a trite and perfectly well established principle of jurisprudence, that no man can take advantage of his own wrong, and the law has been careful to make a special application of this maxim to cases where conditions form part of the contract. Coke on Littleton, 221–22. Digest, liv. 45, tit. 1, law 89. Pothier on Obligations, no. 212." 3 La. at pages 502 and 501. Clearly, under the facts of this case, the defendant was without legal or moral right to withdraw from the joint application to secure the transfer from the Public Service Commission, and, by withdrawing, has brought about the failure to receive the approving Order of the Commission, since it is clearly stated in the ruling of that body

3. With reference to Article 2040 of the LSA–Civil Code of 1870, the Court has previously noted, in the case of Walls v. Smith, 3 La. 498, at page 501, the somewhat obscure English translation of the text from the French article as written in the Louisiana Codes of 1825, Art. 2035, ·and 1808, Art. 78,—the French text in our Codes being identical with that of Art. 1178 of the Code Napoleon, and having the "clear and obvious sense * * * that the condition is considered as accomplished, when the debtor, whose obligation depends on this condition, prevents the accomplishment of it."

that but for the withdrawal of the defendant, the transfer would have been approved.

In support of its claim for damages, the plaintiff offered testimony of its traffic manager, a vice-president of the company, to prove the profits which allegedly would have been realized through acquisition of the certificate in question. This officer testified that surveys were made by him in 1948 and again in 1950, at the time negotiations were begun for the purchase of the certificate, to determine the amount of business to be anticipated over the route authorized by the certificate as well as business which would result from a tie-in at Hammond, La., with the route over which plaintiff is presently authorized to operate (i. e., from Baton Rouge eastward to Slidell) and thus permitting entry to and exit from the port of New Orleans with its vast shipping trade. A "Statement of new service, tonnage, revenue and profit," prepared on the basis of the surveys, contains figures showing the total yearly revenue with respect to tonnage actually handled by plaintiff on its present route to and from the terminal point at Baton Rouge, and the estimated yearly revenue with respect to anticipated tonnage to and from the terminal point of New Orleans. In support of the latter estimates, the traffic manager testified that plaintiff had carried on negotiations with Pan Atlantic Steamship Company to bring rubber manufactured in Baton Rouge to New Orleans, for transshipment to the eastern U. S. seaboard. The District Court restricted this testimony to the damage that would have resulted because of loss of freight between New Orleans and the various points on U. S. Highway 51, ruling that any tie-in advantage to be gained by the plaintiff could not be considered in arriving at its loss, as not having been within the contemplation of the parties. The plaintiff complains of this ruling, contending that its damage was the loss of not being able to transport freight between all points on its existing route and all points on the route covered by the Certificate, which practice is commonly permitted under the rules and regulations of the Public Service Commission; but claims that even under the restricted application of its "Statement" to the route covered by Certificate 297–A, there is shown an estimated daily loss of some $25.

■ The rule is that lost profits, as an element of damages for the breach of a contract, may be recovered where they are not speculative or uncertain in their nature, and are susceptible of proof with reasonable certainty.[4] We think that the trial judge erred in restricting the testimony to the damages that resulted from operations the

4. LSA–C.C. Art. 1934; Tidwell v. Meyer Bros., 160 La. 778, 107 So. 571; Ferguson v. Britt, 191 La. 371, 185 So. 287, and cases there cited; Mabry v. Midland Valley Lumber Co., 217 La. 877, 47 So. 2d 673; see, also, Jefferson Sawmill Co. v. Iowa & Louisiana Land Co., 122 La. 983, 48 So. 428.

defendant himself could have performed, in view of the showing that defendant well knew, through protracted negotiations with plaintiff's officers, that plaintiff wished to acquire the additional route principally to gain an entry to the port of New Orleans for its customers in Baton Rouge and other points along its route. We find, however, from a perusal of the record, that while undoubtedly the plaintiff suffered some damage by the long delay in its use of this additional route, and that such damage is susceptible of proof, it has failed to show with that degree of certainty which the law requires the actual amount of additional business it would have obtained; nor has it shown other items, such as the estimated costs of its operation, which would affect the profits. Therefore, its claim for damages will be nonsuited.

For the reasons assigned, the judgment appealed from is amended by nonsuiting the plaintiff's claim for damages, and, as amended, is affirmed.

On Application for Rehearing.

PER CURIAM. In his application for rehearing the defendant advances the argument that subsequent to the decisions of this Court in State ex rel. Brenner v. Noe, 186 La. 102, 171 So. 708; Martel Syndicate v. Block, 154 La. 869, 98 So. 400; First National Bank of Arcadia v. Johnson, 130 La. 288, 57 So. 930, and City Nat. Bank of Selma v. Walker, 130 La. 810, 58 So. 580, cited in the opinion, the Legislature adopted Act 124 of 1936 (amending Article 333 of the Code of Practice), requiring that all dilatory exceptions be filed in limine and at the same time, so that the above cases were in effect overruled by the 1936 Act; and that the Court overlooked the cases of Browne v. Gajan, La.App., 173 So. 485, Schultz v. Long Island Machinery & Equipment Co., La.App., 173 So. 569, and particularly the case of State v. Younger, 206 La. 1037, 20 So.2d 305, wherein "this Court unequivocably held that, by virtue of Act 124 of 1936, the exception to the jurisdiction ratione personae is not waived if coupled in the alternative with other dilatory or declinatory exceptions * * *."

In the Younger case, unlike the case at bar, the exceptions were filed "only in the alternative, with full reservation of and without waiving his exception to the jurisdiction of the court, and solely for the purpose of complying with the requirements of Act No. 124 of 1936;"[1] where-

---

1. The case of Browne v. Gajan (Ct. of Appeal, First Circuit) is similar; in the case of Schultz v. Long Island Machinery & Equipment Co. (Ct. of Appeal, Second Circuit), reference to the citation was " 'merely for the purpose of showing that the court had no jurisdiction' " and was not " 'in its proper sense, an exception to the citation so that it did not serve as a waiver of the plea to the jurisdiction.' " 173 So. at page 572.

as here, the exceptions to the jurisdiction ratione personae and ratione materiae were submitted together, without reservation, and with the prayer "that these exceptions be maintained and that there be judgment herein in his favor and against plaintiff, dismissing exceptor at plaintiff's costs for these proceedings."

Without further discussion, the other assignments of error are equally without merit, and the application is therefore refused.